[S. F. No. 2991. In Bank.—December 15, 1905.]

HENRY L. TATUM et. al., Respondents. v. ALBERT H. ACKERMAN, Appellant.

SALE ON CREDIT—PREMATURE ACTION FOR PURCHASE PRICE.—Where a sale of personal property is made on an unconditional term of credit, not obtained by fraud or based upon a consideration which has failed and which has not been waived, the seller cannot maintain an action on the contract to recover the purchase price until the expiration of the term of credit, notwithstanding the buyer attempted to repudiate the contract *in toto* and refused to accept the goods.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Naphtaly, Freidenrich & Ackerman, for Appellant.

J. P. Langhorne, for Respondents.

ANGELLOTTI, J.—This action was brought to recover $1,581.98 and interest, in which sum, it was alleged in the complaint, the defendant "became and was indebted to plaintiffs . . . for and on account of goods, wares, and merchandise sold and delivered by plaintiffs to defendant." The allegations of the complaint were specifically denied by the answer, and, in addition, a breach of warranty was alleged,—viz., that an engine, which was one of the articles sold, failed to satisfy the plaintiffs' warranty,—and thereupon the

defendant had rescinded the purchase and had attempted to return the engine to the plaintiffs. It appeared upon the trial that defendant, upon the alleged ground as to the breach of warranty as to the engine, refused to accept or keep any of the merchandise sold and delivered to him, but shipped all the articles from Usal, California, to San Francisco, addressed to the plaintiffs. Plaintiffs refused to receive the goods back from the defendant, but attached them on the institution of this action. On the trial defendant did not introduce any proof as to the alleged breach of warranty, and the court found that the engine was as represented by the plaintiffs. The merchandise had been sold by the plaintiffs to the defendant upon a credit of sixty days from September 24, 1900. This action was commenced within said sixty days,—viz., on the fifth day of November following,—but the court found that the defendant had refused to keep the merchandise and had shipped it back to the plaintiffs, with the intention of abandoning and repudiating his purchase thereof, and that he did repudiate such purchase, and that prior to and at the time this action was commenced he did not intend to pay plaintiffs at any time or at all for the said merchandise, and gave judgment for plaintiffs as prayed for in their complaint. This appeal is taken from the judgment and from an order denying defendant's motion for a new trial.

The contention on this appeal is that the action was prematurely brought,—that an action upon the contract of sale for the purchase price of the articles sold could not be maintained until the expiration of the time of credit allowed thereby,—and this contention presents the only question to be determined. It is, of course, not disputed that where goods are sold on credit an action cannot ordinarily be maintained for the purchase price until the term of credit has expired. Until such time the obligation to pay has not matured, and there has been no breach of contract as to payment. But it is alleged that the credit here was conditioned upon the acceptance of the goods by the vendee, and his payment for them at the expiration of the term of credit, and that by his refusal to accept he necessarily waived the condition as to credit, and in effect declared that he did not intend to pay for the goods at all. The stipulation here as to credit was absolutely unconditional, unless such a con-

dition as is here claimed is necessarily implied in every contract of sale upon credit where no condition is expressed in the contract, for it is not claimed that there was any such express condition in the contract under consideration. We know of no rule of law that will warrant us in holding that such a condition may be so implied from the mere sale of goods on credit, and no case is cited supporting any such theory. In the American note in Bennett's Benjamin on Sales (7th ed. p. 795) the rule is stated as follows, viz: "If credit was unconditionally given by the contract, an action for the full price cannot be maintained under any circumstances before the time of credit has expired. Such action affirms and counts upon the very contract of sale, time of credit included. The fraud or insolvency of the buyer, or abandonment of the contract does not alter the term of credit." Mechem states the rule in substantially similar terms, declaring that, by his action for the price, the vendor affirms the contract and must affirm it as an entirety. (Mechem on Sales, secs. 1410, 1411.) Some authorities hold that where the credit was obtained by fraud the stipulation as to credit may be alone rescinded, and an action brought at once for the price. These cases regard the credit stipulation as an independent one, capable of rescission by itself where it was induced by fraud, without disaffirmance of the sale. Such is the well-settled rule in New York (see *Heilbronn* v. *Herzog*, 165 N. Y. 98, [58 N. E. 759], and in some other states [43 Cent. Dig. sec. 990]). But this doctrine can, of course, have no application to a case where there was no fraud at the time the contract was made.

It appears to be universally recognized that where the credit is unconditional, if it was not obtained by fraud, or based upon a consideration which has failed, or has not been waived, an action will not lie on the contract for the purchase price until the expiration of the term of credit. (See 24 Am. & Eng. Ency. of Law, 2d ed., p. 1122.) Here, as we have seen, the credit was unconditional, and there was no fraud. Nor was there any express consideration for the credit. The credit was undoubtedly given in consideration of the purchase of the goods by the defendant, but plaintiffs, maintaining an action on the contract for the price, and insisting upon the contract, are not in a position to insist that this

consideration has failed. Nor was there any waiver of the credit. An attempted repudiation of the contract *in toto* by the vendee is no waiver of the single stipulation as to credit. The plaintiffs refused to acquiesce in such repudiation and insist that the contract shall be enforced according to its terms, which they have the right to do, but they have no right to make a new contract for the defendant. If, against the will of the vendee, the contract is to stand, the vendee may still insist that it shall stand according to its terms. Construing the refusal to keep the goods and their return as notice on the part of the defendant that he would not pay upon the expiration of the term of credit, plaintiffs are not relieved from the effect of the stipulation as to credit. Section 1440 of the Civil Code, relied on by them, has no application to cases where performance is not yet due upon the part of the party who has previously given notice that he will not perform when such performance is due. In such cases, when performance on his part is due, and not before, if such notice has not been retracted, the other party may enforce the obligation without previously performing or offering to perform any conditions upon his part in favor of the former party. Such is the whole effect of this section. (See in this connection *Keller* v. *Strasburger*, 90 N. Y. 379.)

As contended by plaintiffs, there can be no doubt of the right of a vendor, where the vendee refuses to take the goods sold and delivered, and repudiates the contract, to elect to treat the contract of sale as still in full force, and the goods as belonging to the vendee, and to sue on the contract for the entire contract price. But this does not mean that he may sue for the contract price before it is due according to the terms of the contract, and we have not been able to find any case so holding. The case of *Brady* v. *Isler*, 9 Lea (Tenn.) 356, is precisely in point. There the vendee abandoned possession of the goods, and the vendor repossessed himself thereof, and elected to resell the goods and sue for the difference between the price received upon the resale and the contract price. The action was brought before the expiration of the term of credit, and it was held that the action was premature and must fail. The court said: "It will be observed that no part of the purchase money was due at the time of the resale

of the goods. And in such case the vendee has not been guilty of any breach of the contract as to payment, although he may be in default in respect to his refusal to receive the goods, or, rather, in the abandonment of their possession." The court further, in effect, said that in the aspect of the case contended for by plaintiff, that the contract was valid and subsisting, the money was not due upon it when suit was brought, and that it is essential that it should be due before suit is brought to enforce the collection. We see in this case no possible answer to the objection that the action was brought to recover money alleged to be due upon a contract, before it became due under the terms of the contract. Upon the repudiation of the contract by the vendee, the vendors might have elected to keep the property as their own and at once sue for damages on account of the breach, but this action cannot, under the most liberal rules as to construction of pleadings, be held to be such an action. It was simply and solely an action on the contract for the purchase price, based upon the promise of defendant to pay, and the evidence shows without conflict that, according to the terms of the contract, the liability had not accrued at the time the action was commenced.

The judgment and order denying the new trial must be reversed, and it is so ordered.

Shaw, J., McFarland, J., Lorigan, J., and Henshaw, J., concurred.

BEATTY, C. J., dissenting.—I dissent. This is not strictly an action upon the express contract for the sale of the machinery, but is in form and substance an action in *assumpsit* on an implied contract to pay for the value of goods sold and delivered, and is based upon the claim that the plaintiffs had a right under the circumstances to rescind the stipulation for a credit of sixty days. There is abundant authority for the proposition that one who has sold goods or loaned money on a credit fraudulently obtained may, upon discovery of the fraud, sue in *assumpsit* before the credit has expired. There is no doubt authority to the contrary, one of the most noted cases being *Galloway* v. *Holmes,* 1 Doug. (Mich.) 330. But, on the other hand, the doctrine is sustained

by the highest courts of New York, Massachusetts, Alabama, and perhaps other states, and it commends itself to me as a just and reasonable doctrine. It is founded upon the right of rescission. When a party has been induced to enter into a contract by fraud, he is entitled to rescind that contract by his own act, and if upon such rescission he has a legal claim against the other party he may proceed to enforce it by any appropriate action. The foundation of the doctrine being the right of rescission, it should be applied to any case where the right exists. In New York it has been extended to a case in which after the sale of the goods the purchaser made a transfer of his property in fraud of his creditors. (*Arnold* v. *Shapiro*, 29 Hun, 478.) In that case the court said: When a "fraudulent disposition of the property has taken place at the time of the making of the contract, the fact itself would also avoid credit obtained by means of its concealment in incurring the liability. *In principle the same effect should also follow such a disposition of the debtor's property, after he has contracted the debt and secured the credit, for it is always implied in such transactions that the debtor will make no disposition of his property which will operate as a fraud upon his creditor.*" I have italicized that part of the opinion which states the principle governing cases of this character, which principle, in my opinion, clearly embraces the present case, for here, according to the facts found by the court, the debtor, after obtaining the credit, did make a disposition of his property which would "operate a fraud" upon the creditor. He represented in purchasing the engine that it was to be employed in logging. Instead of putting it to work where it would earn money and enable him to meet his obligation to pay for it at the expiration of the term of credit, he shipped it back to San Francisco, in violation of his contract and at the cost of the plaintiffs, obliging them to pay the freight to prevent its being sold to pay charges, and when it was attached by them they were compelled, of course, to discharge the lien of the carrier. The case is the same in all respects as that of a mechanic who buys a kit of tools on credit, representing that he is going to work at his trade, and who, instead of going to work, pawns the tools and pays another creditor with the money so obtained. I say the two cases are the same because there

is nothing in this record to show that the defendant had any
means of meeting his obligation, except the proceeds of the
business in which he represented the machinery was to be
employed.   He certainly impaired, by his own fault, his
means of paying his debt as represented to the plaintiffs,
and if what he did gave them the right to rescind, I cannot
see why, in view of the principle of the cases referred to,
they could not maintain this action.   Did they, then, have a
right to rescind?   I think they had under subdivision 2 of
section 1689 of the Civil Code.

In asking and obtaining a credit, a purchaser of goods
always represents himself as having, or being able to provide,
the means of discharging his obligation at maturity, and
whatever representation he makes affecting his prospective
ability to pay constitutes the basis upon which the credit is
accorded.   If, then, he materially impairs his ability to meet
his obligation, and by an inexcusable breach of the contract
renders the security of his creditor worthless or precarious,
there is at least a partial failure of consideration for the
credit, and it will be noticed that one authority cited in the
main opinion (24 Am. & Eng. Ency. of Law, 2d ed., p. 1122)
includes among the exceptions to the rule stated the case
in which there has been a failure of consideration for the
credit.   It may be said that the reasoning upon which I hold
this action to have been well brought is technical.   I concede
it, but I call attention to the fact that the main opinion rests
its conclusion upon purely technical grounds.   The right of
plaintiffs to sue at the time they did is conceded, but their
action is defeated because, as it is held, they have sued on
the contract, instead of in tort.   If we are to be technical,
I think we should give the preference to a technicality that
results in upholding a just claim against one who has, as
appears by the findings of the superior court, wantonly
violated his contract, to the serious injury of innocent parties.
There may not be any precise precedent to sustain this action;
but if I have succeeded in showing that the right of rescission
is the basis of the rule which allows a creditor to sue in
*assumpsit* regardless of an unexpired credit expressly stipu-
lated, I have shown that this case is within a principle
sustained by abundant precedent, and, the principle applying,
a court constituted like this should not be afraid to make a

precedent which in all like cases would tend only to the promotion of justice.

Van Dyke, J., concurred in the foregoing.

Rehearing denied.